# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

ESTATE OF WILLIAM R. CAPE,
JENNIFER L. FELDMAN,

        Plaintiffs,

      v.                          Case No.  11-C-0357

UNITED STATES OF AMERICA,

        Defendant.

ORDER GRANTING MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF
SZIDON (DOC. 37), GRANTING MOTION TO COMPEL AND MOTION FOR
EXTENSION OF TIME TO CONDUCT CERTAIN DISCOVERY (DOC. 43), AND
DENYING MOTION TO SUPPLEMENT EXPERT REPORT OF SZIDON OR EXTEND
EXPERT DISCOVERY DEADLINES (DOC. 40)

      Issues arose concerning the expert report and proposed testimony of plaintiffs'

expert, Daniel Szidon, and certain documents in the hands of defendant's rebuttal expert,

Stephen VanderBloemen, resulting in various motions.  The motions are related, and

arguments concerning one motion overlap with arguments concerning another.

      Plaintiffs seek a refund of federal income taxes for certain years based on alleged

overpayments by William Cape, who is now deceased.  Plaintiffs contend that James Cape

& Sons Company ("Cape & Sons"), an S corporation in which William Cape was a

shareholder, overstated its income, resulting in an overstatement of income passed

through to William Cape.  (The parties call these the "Pass-Through Adjustments."[1])

Plaintiffs expect to establish that Cape & Sons made substantially less money during

calendar years 2001 and 2002 than it reported because its contract assets were overstated

while contract liabilities were understated.  (Doc. 48 at 3.)

---

[1]Plaintiffs have additional claims for refund based on alleged computational errors.

The present case is not the first litigation related to the demise of Cape & Sons. Per information from the parties, Cape & Sons was placed in receivership in Racine County in April 2005. The company administratively dissolved in March 2010 and the receivership terminated in August 2011. In addition, the issuer of surety bonds to Cape & Sons, Federal Insurance Company, sued Cape and Sons' auditor, Virchow Krause & Company, in this district regarding Federal Insurance's reliance on erroneous financial statements and audit reports. *See Fed. Ins. Co. v. Continental Cas. Co.*, No. 05-C-764 (E.D. Wis. filed July 20, 2005). One of the issues in that case, whether Cape & Sons overstated its contract income and related assets, appears to overlap with the issues in this case. (*See* Doc. 42 at 2 n.1.) In that action, Federal Insurance hired Stephen Maggart as an expert, and Maggart prepared a report (dated January 7, 2007) about Virchow Krause's audits of Cape & Sons for fiscal years 2002 and 2003. The defendants in the prior federal-court action hired Stephen VanderBloemen as a rebuttal expert, and VanderBloemen prepared a report in which he criticized portions of Maggart's report.

SZIDON'S OCTOBER 11, 2012 REPORT AND TESTIMONY RELATING THERETO

Szidon issued an expert report dated October 11, 2012. In it he offers two opinions, only one of which (Opinion 1) is presently at issue. Opinion 1 has three parts:

- Overstatement A: Cape & Sons recorded a fraudulent receivable from Alby Materials in the amount of $657,704 as of December 31, 2002, which resulted in an overstatement of income of that amount.

- Overstatement B: Cape & Sons failed to write off a worthless receivable due from Bowles Construction Services, Inc. as of December 31, 2002; the

2

company should have written off $1,262,959 for the year ended December 31, 2002.

- • Overstatement C:  Cape & Sons overstated its income by a cumulative amount of $8,385,702 as of December 31, 2002, due to a failure to record contract losses totaling $5,760,750 and overstated underbillings totaling $2,624,952; the majority of the overstatement occurred from 1998 to 2002.

Defendant challenges the reliability of Szidon's report, citing Fed. R. Civ. P. 702 and 703.  Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify to an opinion if the testimony will help the trier of fact to understand the evidence or to determine a fact in issue, is based on sufficient facts or data, and is the product of reliable principles and methods that are properly applied.  Fed. R. Evid. 702; *Stollings v. Ryobi Techs., Inc.*, ___ F.3d ___, ___, 2013 WL 3964477, at *9 (7th Cir. Aug. 2, 2013).  The district court is charged with responsibility to act as a gatekeeper to exclude unreliable expert testimony.  Fed. R. Evid. 702 advisory committee notes 2000 amendments; *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Stollings*, ___ F.3d at ___, 2013 WL 3964477, at *9.

The party providing the expert bears the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.  *Id.*  However, rejection of expert testimony is the exception rather than the rule.  Fed. R. Evid. 702 advisory committee notes 2000 amendments.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 595.

3

The focus of inquiry should be on principles and methodology and whether they have been properly applied to the facts. Fed. R. Evid. 702 advisory committee notes 2000 amendments; *see Daubert*, 509 U.S. at 595. The role of the judge is to ensure that the expert is using a valid methodology, is using sufficient data, and is applying the methodology appropriately. *Stollings*, ___ F.3d at ___, 2013 WL 3964477, at *10. The expert's opinion must amount to more than a mere bottom line. *See Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010); *Quad/Graphics, Inc. v. One2One Commc'ns, LLC*, No. 09-CV-99-JPS, 2011 WL 4478440, at *3 (E.D. Wis. Sept. 23, 2011) (Stadtmueller, J.).

Reliable opinions of other experts may be included as "data" on which an expert bases his or her testimony. Fed. R. Evid. 702 advisory committee notes 2000 amendments. Under Rule 703, "[a]n expert may base an opinion on facts or data that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. Although an expert may rely on another expert's report in arriving at an opinion, the expert cannot vouch for the truth of what another expert told him. *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005); *Fisher v. Sellas (In re Lake States Commodities, Inc.)*, 272 B.R. 233, 242 (Bankr. N.D. Ill. 2002), *aff'd*, *Fisher v. Page*, No. 01 C 1698, 2002 WL 31749262 (N.D. Ill. Dec. 3, 2002). While Rule 703 liberalizes the rules on hearsay and expert testimony, "it was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Loeffel Steel*, 387 F. Supp. 2d at 808.

4

If an expert intends to rely upon the expert report of another, he or she must evaluate the methods used by the earlier expert and demonstrate familiarity with the methods and reasoning used by the earlier expert. *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993). In *TK-7 Corp.*, for instance, the Tenth Circuit found that an expert use of another's projections to form his opinion was impermissible where the expert had no familiarity with the methods or reasoning of the other person, the expert knew little or nothing about the other person, the record showed no attempt by the expert to corroborate the projections, and there was no evidence that other experts in the field would rely on such projections. 993 F.2d at 732-33.

In Attachment D to the his report, Szidon said he considered three items of information in forming his opinions: (1) Maggart's report; (2) audit reports for Cape & Sons and subsidiaries for the years ending December 31, 1999, through 2003; and (3) an affidavit of Lance Evans dated July 27, 2006. (Doc. 39 Ex. 2 attach. D.) Evans's affidavit stated that Evans was the Information Systems Manager at Cape & Sons from December 1992 until the company's receivership in 2005, that Evans had a comprehensive understanding of "heavy highway construction accounting" as well as "the methodology used to generate the Company's accounting reports." (Doc. 39 Ex. 6 at 1-2.) Evans attached a spreadsheet to his affidavit, showing (he said) a job-by-job history of certain construction accounts receivable that were on the books of Cape & Sons on December 31, 2001. (*Id.* at 2.)

Szidon described his use of Maggart's report as follows:

> The primary source for my opinions was the information contained in the report of Maggart & Associates, P.C. . . . . Based on my review of the Maggart Report it is clear to me that Stephen Maggart and his associates

5

performed a detailed examination of source materials impacting the 2002
and 2003 audits of James Came and Sons Company and Subsidiaries. . . .
Specifically, the conclusions reached in his report are detailed and well
documented. Accordingly the report is deemed to be highly reliable and well
suited for the purpose of this report.

(Doc. 39 Ex. 2 attach. A Intro.)  In discussing Overstatement C, Szidon wrote:  "In

reviewing the Maggart Report and its supporting schedules and attachments, nothing came

to my attention that would cause me to conclude to the contrary regarding these amounts.

Specifically, it was clear that Cape & Sons supporting records were rigorously examined

and summarized by Stephen Maggart . . . ."  (Doc. 39 Ex. 2 attach A Overstatement C.)

In addition, Szidon stated that the overstatements noted in the Maggart report were

supported by the Evans affidavit.  However, in Szidon's opinion, "the nature of Mr.

Evans['s] analysis precludes it from being used as a precise estimation of overstated

contract revenues as of December 31, 2001," though Szidon thought Evans's analysis "can

and should be used as supporting the overall conclusion of the Maggart Report."  (Doc. 39

Ex. 2 attach A Overstatement C.)

At deposition, defense counsel asked Szidon to describe his methodology in

reaching his opinions.  Szidon testified:

Well, utilizing the information that I say I relied upon in Attachment D, clearly
the primary sources was looking at the report of Maggart & Associates,
which, as I'm sure you're aware of, was extensive and very detailed.
    Utilizing that and what I've understood to be the case – understood to
be the facts of what happened, you know, to the company subsequent, you
know, to 2001, 2002, taking all that information together and drawing
conclusions accordingly.

(Doc. 39 Ex. 5 at 49-50.)  When asked about his process used to confirm Maggart's

analysis Szidon stated:

6

> Given the nature of this exercise, there's very little that you can do directly. When the company is not in existence, it records, to the best of my knowledge, are not available or certainly not easily available.
>
> At the same time, based on the detail and the methodology laid out in the report, you know, it was my professional judgment that I didn't necessarily need to validate what had been done. . . . I think it was a pretty exhaustive examination of what occurred.

(*Id.* at 105.) He said that he deemed the Maggart report to be reliable, "much like an audit report is generally deemed to be reliable. We have an independent CPA who conducted an examination." (*Id.* at 107.) According to Szidon, there was nothing in the Maggart report or its attachments that contradicted the conclusion Maggart came to. (*Id.* at 121.) Moreover, Szidon indicated that he did not review any of Maggart's work papers, nor did he ask for them. (*Id.* at 136-37.) He verified Maggart's analysis of inappropriately recognized revenue on jobs outstanding as of December 31, 2002, only by looking at Maggart's report and its exhibits. (*Id.* at 159.) Szidon added that he did not attempt to repeat or verify Maggart's methodology, saying that he did not have Maggart's work papers or the detail that Maggart looked at. (Doc. 49 Ex. F at 218.) Lastly, Szidon said he believed that as of the time he wrote the October 2012 report he was unaware of any rebuttal report to the Maggart report. (Doc. 39 Ex. 5 at 66.)

Szidon's report and proposed testimony fail to meet Rule 702's requirement of a valid methodology. His methodology appears to have been limited to reading the Maggart report, audit reports, and Evans's affidavit, and then "taking all that information together and drawing conclusions accordingly." (Doc. 39 Ex. 5 at 49-50.) That is not a principled method at all. Plaintiffs' brief says Szidon "analyzed" the three items he listed on Attachment D and also considered the history of Cape & Sons and its dissolution. (Doc. 48 at 10, 12-13.) Further, plaintiffs submit Szidon "reviewed" the Maggart report and

7

"us[ed] his expertise in accounting" (Doc. 48 at 11), and "applied his extensive knowledge of accounting practices" (Doc. 48 at 12). But such general descriptions do not describe any methodology adequately. Plaintiffs and Szidon fail to identify *how* Szidon analyzed information, what process he used, or what, if any, standards he referenced.

Further, it appears Szidon's reliance on the Maggart report is not based on reliable methodology. Szidon said he reviewed Maggart's report and saw no problems with it, yet he set forth no procedure or method by which he came to that conclusion. He did not review the work papers behind Maggart's report, documentation from Cape & Sons other than audit reports, or VanderBloemen's rebuttal to the Maggart report. More importantly, Szidon was unable to describe how he tested Maggart's conclusions or even whether *Maggart's* methodology was valid. Szidon said he thought Maggart's report was reliable because a CPA was involved and the report was "extensive," "exhaustive," and "detailed." But length, completeness and detail of a report do not necessarily mean that the writer of the report used reliable methods or principles in coming to conclusions. For example, in *In re Lake States Commodities* the court found an expert's sampling of a prior report's data to be insufficient testing of the prior report. 272 B.R. at 244-45.

Here there was *no* testing whatsoever of the Maggart report's methodology or conclusions. Moreover, Szidon's report fails to meet the requirements of Rule 703. Szidon says he is not vouching for the Maggart report, yet his opinion discloses that he merely read the Maggart report and a few other documents and found nothing wrong with the Maggart report's conclusions. However, evidence in the record does not indicate that experts in this particular field would reasonably rely on reports like the Maggart report.

8

Hence, the court finds that the motion in limine to exclude Szidon's October 2012 report and any testimony based on that report should be granted.

SZIDON'S DECEMBER 18, 2012 SUPPLEMENT TO HIS REPORT
AND TESTIMONY RELATING THERETO

After plaintiffs received the rebuttal report of VanderBloemen, Szidon reviewed additional materials. Thereafter, on December 18, 2012, plaintiffs' counsel forwarded to defense counsel a revised Attachment D to Szidon's expert report. (Doc. 39 Ex. 23.) The revised Attachment D listed fifteen additional items as information considered by Szidon. (*Id.*) No other portion of the October 2012 report was supplemented or revised.

Because the court finds that Szidon's October 2012 report must be excluded there is nothing for Szidon to supplement. *See Brooks v. Gen. Cas. Co.*, No. 06-C-996, 2007 WL 7055475, at *4 (E.D. Wis. Dec. 12, 2007) (Griesbach, J.) (stating that the federal rules contemplate supplementation "of an already sufficient report" and do not contemplate that supplementation allows an initial deficient expert report). Instead, plaintiffs are left trying to replace the October 2012 report with the December 2012 report.

But supplementation is not properly used to remedy defects in an expert's report or testimony after the weaknesses have been revealed. *See Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 681 (6th Cir. 2011); *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 433 (N.D. Okla. 2008). Attempts to introduce a new methodology after the deadline for expert disclosures may be rejected by the district court. *See Pluck*, 640 F.3d at 681. A supplemental expert report that is used to strengthen the opinion of the original report is beyond the bounds of permissible supplementation. *Cohlmia*, 254 F.R.D. at 433. Expert testimony may not be presented at trial if it was not disclosed to the other side within the

9

deadline unless the party was justified in missing the deadline or the untimeliness was harmless (though the court may impose some other appropriate sanction instead). *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 615 (7th Cir. 2002).

To the extent that the revised Attachment D was meant to bolster Szidon's report through his review of additional materials, any attempt to remedy defects in Szidon's report is rejected. As discussed in Szidon's deposition testimony, many of those items came to his attention only after VanderBloemen's rebuttal report came out and Szidon's conclusions were criticized.

Moreover, nothing in the revised Attachment D cures the reliability problem the court has noted. Neither in his supplemental attachment nor at his deposition did Szidon set forth reliable principles or methodology by which he reviewed the information or generated his conclusions, before or after the review of the additional materials. Szidon's latest expert report is as faulty with the revised Attachment D as it was with the original Attachment D. Consequently, the supplement is rejected and the motion in limine to exclude any testimony by Szidon relating to an opinion including the December 2012 supplement should be granted.

INFORMATION IN THE CUSTODY OF VanderBloemen

As stated above, VanderBloemen provided expertise in the Federal Insurance case for Virchow Krause regarding Cape & Sons, and was designated a rebuttal expert in this case by the defendant. In his deposition on January 4, 2013, the last day of the discovery period, VanderBloemen referenced the need to look at his work papers from his expert report in the Federal Insurance case. Following the deposition, the United States agreed to produce any information and work papers considered by VanderBloemen in the Federal

10

Insurance case. (Doc. 35 at 2.) Plaintiffs refer to such materials as the "Analyzed Materials."

In addition, plaintiffs learned at VanderBloemen's deposition that he was in possession of or had access to additional information and materials relating to contract assets and liabilities of Cape & Sons, which he did not use for his report. Plaintiffs seek production of those documents and materials, which it describes as the "Disputed Materials." (Doc. 35 at 2-3.) Defendant resists plaintiffs' requests claiming that the Disputed Materials are not covered by any document request propounded by plaintiffs, the documents are not relevant, the documents were not considered by VanderBloemen, and the request is untimely. (*See* Doc. 35 at 3.)

Plaintiffs move the court to compel the production of the Disputed Materials. Also, they seek permission to further supplement Szidon's expert report and amendment of the scheduling order to extend the discovery deadline as to expert discovery so Szidon can consider these documents and opine on them. Defendant opposes these motions, pointing out that discovery has closed and that plaintiffs were not diligent, as they waited until the very end of discovery to depose VanderBloemen and seek other discovery.[2]

The court has reviewed the parties briefs on the matter and will compel production of the materials. Regardless of whether the documents were covered by prior discovery requests, the court will order their production even after the discovery deadline. No dispositive motion deadline or trial date is set in this case, and VanderBloemen's expert report was provided to plaintiffs on December 5, 2012, just one month before the

---

[2]Defendant does not contend that the documents are in a third-party's possession rather than its own, conceding that it can produce the documents if ordered to do so.

11

deposition. Even though VanderBloemen was deposed on the last day of discovery, plaintiffs did not wait an extensive length of time before deposing him and learning of these documents. The documents appear relevant to the operations and financial situation of Cape & Sons. Moreover, with the receivership and dissolution of Cape & Sons and the years that have elapsed since, company documents and information appear hard to come by. Plaintiff may find documents that it has not seen.[3] The court sees no prejudice to defendant at this time. Thus, the motion to compel and for an extension of the discovery deadline to engage in this discovery will be granted respecting the Disputed Materials only; general discovery will not be extended.

However, Szidon's report may not be supplemented following his review of the Analyzed Materials and Disputed Materials. Any correction of Szidon's methodology would invite more discovery and a brand-new report by Szidon. That *would* cause prejudice to defendant. Defendant has already deposed Szidon and incurred costs for VanderBloemen to analyze his original report. To allow Szidon to provide another expert report, whether deemed a replacement or supplement, would cause additional work and expert costs for defendant.

CONCLUSION

For the above-stated reasons,

IT IS ORDERED that defendant's motion in limine to exclude Szidon's report, supplemental report, and testimony (Doc. 37) is granted.

---

[3]Also, plaintiffs indicate that their efforts to obtain relevant information have been hindered by the "implosion" of Arthur Anderson, the accounting firm that audited Cape & Sons from 1998 to 2001, the death of William Cape in 2002, and the unsuccessful attempts to operate Cape & Sons' servers. (Doc. 48 at 5-6.)

IT IS FURTHER ORDERED that plaintiffs' motion to compel and to extend the discovery deadline (Doc. 43) is granted; discovery is extended for the sole purpose of production of the Disputed Materials and not for general discovery.

IT IS ORDERED that defendant shall promptly produce the Disputed Materials.

IT IS FURTHER ORDERED that plaintiffs' motion to allow supplementation of Szidon's expert report or to extend expert discovery deadlines (Doc. 40) is denied.

Dated at Milwaukee, Wisconsin, this 27th day of August, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

13